UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JULIA ANNE CASTLE,

    Plaintiff,

v.                                                Case No: 5:16-cv-266-Oc-18PRL

COMMISSIONER OF SOCIAL
SECURITY

    Defendant.

REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I submit that the Commissioner's decision should be AFFIRMED.

I.   BACKGROUND

In December 2012, Plaintiff filed applications for DIB and SSI benefits, alleging disability beginning February 28, 2009. (Tr. 202-08, 209-15). The claim was denied initially, and upon reconsideration. At Plaintiff's request, a hearing was held on August 22, 2014, where both the Plaintiff and an impartial vocational expert testified. On September 19, 2014, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 19-36). Plaintiff's request for review was denied by the Appeals Council (Tr. 1-4), and Plaintiff

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any un-objected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

initiated this action on April 8, 2016. (Doc. 1). Plaintiff has exhausted her administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: major depression, obsessive compulsive disorder, panic disorder, attention deficit hyperactivity disorder, personality disorder, post-traumatic stress disorder, bipolar disorder, hypertension, and migraine headaches. (Tr. 21).

The ALJ found that the Plaintiff had the residual functional capacity to perform less than the full range of medium work. (Tr. 23). The ALJ found that Plaintiff can occasionally lift and/or carry fifty pounds, and frequently lift and/or carrying twenty-five pounds. She can sit, stand, and walk for six hours each in an eight-hour day. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. The claimant should avoid exposure to extremes in temperatures, and workplace hazards such as moving machinery and unprotected heights. She can perform simple tasks and make simple work-related decisions. The claimant can have no more than occasional contact with co-workers and supervisors, and is unable to interact with the public. That time off task be accommodated by normal breaks.

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as kitchen helper, laundry worker, and cook helper. (Tr. 34-35). The ALJ's finding includes his consideration of Plaintiff's limitations that erode the unskilled medium occupational base, and the vocational expert's testimony regarding what functions Plaintiff could perform in light of her limitations. (Tr. 35). Accordingly, the ALJ determined that Plaintiff is not disabled. (Tr. 35-36).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. DISCUSSION

Here, Plaintiff argues that the ALJ failed to properly evaluate her mental impairments and improperly concluded that she could maintain full-time employment. However, other than citing to various mental health records, all of which the ALJ expressly considered, Plaintiff fails to explain how the ALJ erred in evaluating the evidence or how the records support greater limitations than those included in the RFC. After reviewing the record, I submit that substantial evidence supports the ALJ's assessment of Plaintiff's mental limitations, and thus, his decision should be affirmed.

The ALJ discussed Plaintiff's treatment for mental health issues which does not support disabling limitations. In January 2012, Plaintiff was seen by Anna B. Schwait, a psychiatric mental health nurse practitioner at Archer Family Health Care. (Tr. 478-81). Plaintiff reported "doing terrible" and stated that she has been dealing with inattentiveness all of her life. Plaintiff's mental status assessment was normal and she was diagnosed with bipolar II disorder, post-traumatic stress disorder, and rule out borderline personality disorder. Ms. Schwait assigned a GAF score of 61, which reflects some mild symptoms.

In February 2012, Plaintiff saw Ms. Schwait again and reported continued difficulty focusing, maintaining concentration and motivation to initiate tasks. (Tr. 482). However, she reported that her depression was improved with Effexor. In April 2012, Plaintiff requested medication to help her focus on course work. (Tr. 486). She advised that the prescribed Effexor helped her focus enough to get through the semester at the University of Florida. In May 2012, Plaintiff saw Ms. Schwait again and reported "feeling normal for the first time, not overwhelmed with anything I have to do" and that she was interacting more with other students. (Tr. 487).

In May 2012, Plaintiff saw Dr. Shenary Cotter at Archer Family Health Care. (Tr. 352-53). Findings on mental status were normal. Although Plaintiff noted immediate improvement in her ability to complete tasks after taking Adderall, she did not take a second dose because it elevated her blood pressure. She also reported self-reducing the dosage of Effexor and forgetting to take it as prescribed.

Plaintiff was seen by Dr. Julie Rodriguez, a psychiatrist, at the University of Florida Counseling and Wellness Center during May and July 2012. (Tr. 26-27, 338-42). In May 2012, Dr. Rodriguez noted that Plaintiff had mild recurrent major depressive disorder, generalized anxiety disorder, a history of PTSD, and claustrophobia. (Tr. 339-40). Plaintiff reported that her anxiety had improved on Effexor. While she reported feelings of worthlessness, hopelessness, low energy and poor concentration, she had a good appetite and denied sleeping problems. On examination, Plaintiff was oriented to person, place, time, and situation; her affect and mood were euthymic and reactive and she had no abnormalities in speech, thought content, or thought process; and she had good insight and judgment. The examination in July 2012 was largely unchanged. (Tr. 341-42).

In January 2013, Shenary Cotter, M.D. at Archer Family Health Care noted that Plaintiff reported only taking Adderall when she "needed to clean her house or do something for school." Dr. Cotter refused to further prescribe Adderall for how Plaintiff was using it and with her refusal to be seen regularly, or do learning instruction. (Tr. 348). That same month, Plaintiff became eligible for testing accommodations and a reduced course load while pursuing her degree at the University of Florida. (Tr. 368).

In April 2013, Plaintiff was evaluated at Meridian Behavioral Healthcare, and diagnosed with post-traumatic stress disorder, attention deficit hyper-activity disorder, and mood disorder not

otherwise specified. (Tr. 401-04). She was assigned a GAF score of 65 and medication was recommended.

By letter dated May 14, 2013, Ms. Schwait noted that Plaintiff had been treated since July 2011 at the Archer Family Health Care clinic for symptoms consistent with post-traumatic stress disorder, as well as difficulty focusing, maintaining concentration, and lack of motivation. (Tr. 377). Ms. Schwait noted that Plaintiff had tried several different medications and that she was currently prescribed Effexor and Strattera.

Plaintiff returned to Meridian Behavioral Healthcare on May 16, 2013 and was seen by Katina Vasquez, MS. (Tr. 391-96). Plaintiff stated that she wanted to engage in therapy. Ms. Vazquez diagnosed major depressive disorder, recurrent, unspecified; posttraumatic stress disorder; and identity problem. She assessed a GAF score of 45 and recommended outpatient treatment, including therapy and medication.

On June 5, 2013, Plaintiff returned to Ms. Schwait and reported increased anxiety, obsessive and intrusive thoughts, flashbacks, and depression since the death of her father. She reportedly completed her spring courses. Ms. Schwait noted that Plaintiff was resistant to taking prescribed medications. Plaintiff was prescribed Pristiq and directed to return to the clinic in six weeks for counseling.

In July 2013, Plaintiff was seen by Sanford Kaufman, M.D. at Meridian Behavioral Healthcare. Plaintiff's diagnosis was unchanged but she reported insomnia and that she had cut down on her prescribed Adderal. (Tr. 405-07). In August 2013, Plaintiff reported feeling overwhelmed and anxious, with decreased concentration, and forgetfulness. (Tr. 408-10). Plaintiff requested amphetamines but Dr. Kaufman prescribed prazosin. In October 2013, Plaintiff was demanding and argumentative about her need for amphetamines and requested

another doctor who would prescribe them. (Tr. 413). Plaintiff was argumentative and demanding with subsequent care providers about obtaining amphetamines and on at least one occasion was noted to be exhibiting drug seeking behavior. (Tr. 414-16, 468, 472, 475).

Plaintiff also attended weekly therapy sessions with Olivia Perin, LCSW. (Tr. 417-59). At her initial session on June 25, 2013, Plaintiff's mood was normal and affect was congruent (Tr. 417). Subsequent sessions reflected largely normal mental status findings and comments that Plaintiff was making good progress. (Tr. 419-59). On January 14, 2014, Plaintiff reported reduced angry outbursts and panic attacks, and improved coping skills and insight. (Tr. 464).

With respect to opinion evidence, the ALJ considered the 2007 clinical evaluation by Linda Abeles (Tr. 313-14) and the 2008 evaluation with Janet Humphreys (Tr. 316-22). The ALJ properly accorded these evaluations little weight because they were conducted well before Plaintiff's alleged onset date and Plaintiff engaged in significant employment activities after the date of the evaluations. (Tr. 30). Other than reciting the findings from the evaluations (*see* Doc. 19 at 18-19), Plaintiff does not argue that the ALJ failed to properly consider this evidence nor does she challenge the ALJ's decision to accord light weight to the evaluations. Accordingly, any such argument is waived.

On January 4, 2012, Diana M. Benton, PsyD, performed a psychological evaluation, which the ALJ discussed at length and accorded significant weight finding that it was consistent with the record evidence. (Tr. 30-31, 323-27). On examination, Plaintiff's mood was depressed and her affect irritable, but her thought processes were logical and goal-oriented and her thought content showed no evidence of perceptual abnormalities. She was oriented in person, place, and time; had no significant issues with immediate or recent memory; and was able to perform subtraction, mental addition, and simple multiplication. Dr. Benton's diagnosed recurrent, moderate, major

depressive disorder; PTSD; anxiety disorder, not otherwise specified; ADHD, predominantly inattentive type; personality disorder, not otherwise specified; and alcohol, cocaine, and barbiturate dependence, in full remission. Dr. Benton opined that Plaintiff's prognosis to obtain and maintain work appears guarded because her mood and anxiety symptoms may impact her capacity for sustained social interaction and ADHD symptoms may impact her capacity for sustained concentration, which in turn may impact her ability to carry out complex instructions. The ALJ gave Dr. Benton's opinion great weight and accounted for the above limitations in Plaintiff's RFC by finding she could "perform simple tasks and make simple work-related decisions. The claimant can have no more than occasional contact with co-workers and supervisors, and is unable to interact with the public. Time off task to be accommodated by normal breaks." Other than reciting the diagnoses and quoting excerpts from the evaluation, Plaintiff does not argue how (if at all) the ALJ erred in his consideration of this record, nor does she offer any explanation as to how Dr. Benton's evaluation supports mental limitations beyond those included in the RFC.

On July 16, 2013, Anna B. Schwait completed a "medical statement concerning bipolar disorder and related conditions for Social Security disability claim." (Tr. 387-90). Ms. Schwait checked boxes stating that Plaintiff had extreme restriction of activities of daily living; extreme difficulty in maintaining social functioning; and was either markedly impaired or extremely impaired in all work limitations related to psychiatric state The ALJ accorded Ms. Schwait's opinion little weight. (Tr. 32-33). Other than quoting excerpts from the medical statement, Plaintiff does not make any argument as to how (if at all) the ALJ erred in considering Ms. Schwait's opinion, and thus, has waived any challenge. Moreover, the ALJ properly accorded little weight to the opinion. As the ALJ correctly explained, Ms. Schwait's opinion, as a nurse

practitioner, is not entitled to any special significance and her opinion of disabling limitations is not consistent with Plaintiff's conservative treatment and prescribed medication.

The ALJ also considered the opinion of state agency doctor, Nancy Hinkelday, Ph.D., who reviewed Plaintiff's medical records and completed a mental RFC assessment on February 14, 2013. (Tr. 32, 83-88, 96-101). Dr. Hinkeldey opined that Plaintiff had mild restrictions in activities of daily living and moderate restrictions in social functioning and concentration, persistence, or pace. Specifically, she found that Plaintiff could: (1) understand, retain, and carry out simple instructions; (2) consistently and usefully perform routine tasks on a sustained basis with minimal (normal) supervision; (3) cooperate effectively with public and coworkers in completing simple tasks and transactions; and (4) adjust to the mental demands of most new task settings. The ALJ accorded significant weight to Dr. Hinkeldey's opinions regarding Plaintiff's activities of daily living and concentration, persistence or pace, but disagreed with respect to social functioning, finding that Plaintiff is markedly (not moderately) impaired.

The ALJ also considered the opinion of state agency doctor, Lawrence Annis, Ph.D. (Tr. 32, 112-14, 126-28). Dr. Annis opined that Plaintiff could understand and remember simple instructions and most complex instructions. He further opined that Plaintiff was mentally able to sustain concentration and persist at range of routine occupational tasks within physical tolerances and skill levels for at least two hours at a time through an 8-hour workday. He opined that Plaintiff may experience some decrease in concentration, but she can attend to and complete a range of routine tasks as needed. He opined that Plaintiff was able to understand and follow a schedule. He opined that Plaintiff may be best suited for gainful employment in environments with limited social interaction and a non-confrontational supervisor. She may have some difficulty adapting to change, but would be able to function within a stable work assignment.

Plaintiff was better able to adapt to changes after an initial employment period. He also opined that Plaintiff was mentally able to perform a range of routine occupational tasks in settings with low social demands and which are not fast-paced or quota-driven. The ALJ accorded significant weight to Dr. Annis' opinions regarding Plaintiff's activities of daily living and concentration, persistence or pace, but found that the evidence shows that Plaintiff's social functioning is markedly (not moderately) impaired.

Based on the ALJ's thorough consideration of the record evidence, I submit that he properly assessed Plaintiff's mental limitations. Indeed, other than conclusory statements that Plaintiff was not capable of maintaining full-time employment, Plaintiff has failed to show that her mental impairments caused greater functional limitations than those included in the RFC.

## IV. RECOMMENDATION

Accordingly, I submit that the ALJ'S decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**ENTERED** in Ocala, Florida on May 10, 2017.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties